UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NANCY B. MERCADO,<br><br>      Plaintiff,<br><br>      v.<br><br>BANK OF AMERICA, N.A. FKA BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, *et al.*,<br><br>      Defendants. | Civ. No. 2:12-01123 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiff Nancy Mercado brings this mortgage fraud case against a host of defendants including Bank of America, N.A. ("BAC"). This matter comes before the Court on BAC's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, BAC's motion to dismiss is **GRANTED** in part, and **DENIED** in part.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

      Joseph Salerno was a mortgage loan officer working at the brokerage firm Hanover Funding. In 2008, Salerno informed Mercado that he could help with a home mortgage refinance. Second Am. Compl. ("Compl.") ¶¶ 7, 16, ECF No. 17. Salerno ultimately recommended a loan that would, he said, lower Mercado's monthly mortgage payments to $1,200. *Id.* ¶ 18.

      According to the Complaint, BAC "caused" Salerno to "direct" Mercado into applying for a particular loan. *Id.* ¶ 44. Indeed, based on the Complaint, it appears that BAC exerted a significant degree of influence over Salerno when it came to Mercado's loan. BAC authorized Hanover Funding, Salerno's employer, "to execute the subject loan as approved by and following the guidelines of BAC." *Id.* ¶ 39. BAC "directed and authorized" Salerno's communications with Mercado "regarding the features of the subject loan and concerning the underwriting of the subject loan." *Id.* ¶ 41. BAC "directed" Salerno with respect to "closing conditions, funding conditions, and as to

1

changing interest rate offerings," and also "in how to educate borrowers, including Plaintiff, about the loan process." *Id.* ¶¶ 42-43. Finally, BAC instructed Salerno in "how to direct borrowers, including Plaintiff, into the subject loan and similar rate loans." *Id.* ¶ 43.

After the loan closed, Mercado was disturbed to learn that her monthly mortgage payments were more than $2,000—not $1,200, as promised. *Id.* ¶ 21. Mercado was also disturbed to learn that she qualified for the loan because Salerno had forged the income information on her W-2 form. *Id.* ¶ 22.

Mercado ultimately defaulted, and her mortgage was assigned to BAC. On January 4, 2011, a friend of Mercado's sent BAC a letter (the "January 4, 2011 Letter"). The January 4, 2011 Letter described a phone call Mercado's friend had with BAC's Fraud Unit. *Id.* ¶ 31. During that call, the friend explained that Mercado never gave Salerno the W-2 that was used in connection with Mercado's loan application. *Id.* The January 4, 2011 Letter accused Salerno of fraud. *Id.* ¶ 32. Mercado claims that the January 4, 2011 Letter was a "qualified written request" for purposes of the Real Estate Settlement Procedures Act ("RESPA"). BAC did not respond to the January 4, 2011 Letter. *Id.* ¶ 33.

On February 23, 2011, in an attempt to rescind her mortgage, Mercado sent Bank of America a "Truth In Lending Act Rescission Notice." *Id.* ¶¶ 32-33. Bank of America refused to rescind Mercado's mortgage. *Id.* ¶ 35.

On February 22, 2012, Mercado filed a nine count Complaint against several defendants including Salerno and BAC. ECF No. 1. On March 27, 2012, before Defendants answered or moved to dismiss, Mercado filed a nine count amended complaint. Seven of those counts sounded in state law: fraud (Count I); breach of contract/warranty (Count II); violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count III); negligence (Count IV); breach of the implied covenant of good faith and fair dealing (Count V); breach of fiduciary duty (Count VI); and conspiracy and aiding and abetting (Count XII). Two counts sounded in federal law: violation of the Truth in Lending Act ("TILA"), as amended by the Home Ownership and Equity Protection Act ("HOEPA"), and violation of RESPA.[1]

BAC moved to dismiss all counts. The Court denied the motion to dismiss the TILA/HOEPA count to the extent it sought rescission, but it granted the motion to dismiss the TILA/HOEPA count to the extent it sought money damages. The Court dismissed the negligence and breach of fiduciary duty claims with prejudice. The Court dismissed the remaining claims without prejudice. On December 14, 2012, Mercado filed the Second Amended Complaint (the "Complaint").

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.

---

[1] The Amended Complaint did not contain counts IX, X, or XI.

The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 129 S.Ct. at 1949.

In considering a motion to dismiss, courts generally rely on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). Courts may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). For purposes of this motion, the Court will consider the document Mercado's complaint refers to as a "Notice of the Right to Cancel." Compl. ¶ 35; *see also* Bender Certification, Ex. 5, ECF No. 21-2.

### III. DISCUSSION

The Complaint contains six counts. Count I is a claim for fraud under New Jersey common law. Count II is a claim for fraud under the NJCFA. Count III is a claim for breach of the covenant of good faith and fair dealing under New Jersey common law. Count IV is a claim for violations of TILA and HOEPA. Count V is a claim for violations of RESPA. Count VI is a claim for conspiracy and aiding and abetting under New Jersey common law. BAC moves to dismiss all claims.

A.   **Federal Claims**

1.   TILA and HOEPA (Count IV)

Count IV asserts a claim under TILA and HOEPA for the rescission of Mercado's mortgage.[2] In its prior decision, the Court denied BAC's motion to dismiss this count to the extent it sought rescission (though it granted BAC's motion to dismiss the HOEPA claim for money damages). BAC now offers new arguments in favor of dismissal. First, it argues that Mercado's rescission claim is foreclosed because Mercado was provided with two copies of a notice of her right to rescind at the closing. Second, BAC argues that even if Mercado was not provided with two copies of a right to rescind notice at the closing, Mercado's claim is still untimely.[3] The Court disagrees with BAC's arguments.

HOEPA requires that borrowers be provided with two copies of a "notice of right to rescind" (the "Notice"). 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b). If borrowers are not provided with two copies of the Notice, they can rescind their mortgage. *See Marr v. Bank of America, N.A.*, 662 F.3d 963, 968 (7th Cir. 2011) ("This is not a situation in which there is any room for some kind of substantial compliance rule. Two copies means two copies, not one."); *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 464 (E.D.Pa. 2009) ("[A] plaintiff provides sufficient basis for a request for rescission under TILA with allegations that a lender did not provide the proper number of copies of notice of right to rescind to each borrower."). To rescind a mortgage entered into without the notice required by HOEPA, a borrower must provide her lender with a valid rescission notice within three years of "the date of consummation of the [subject] transaction or upon the sale of the property, whichever occurs first." *Sherzer v. Homestar Mortg. Servs.*, 707 F.3d 255, 257-61 (3d Cir. 2013) (citing 15 U.S.C. § 1635(f)).

Recognizing that a great deal hinges on proper notice, Congress created a rebuttable presumption that borrowers receive all of the notices required by HOEPA. 15 U.S.C. § 1635(f). This presumption is weak. "The testimony of a borrower alone is sufficient to overcome [HOEPA's] presumption of receipt." *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180, 191 (3d Cir. 2011).

BAC argues that Mercado has not stated a claim for rescission because Mercado was provided with two copies of the Notice at her closing. In support of this argument, BAC points to a signed acknowledgment from Mercado attesting to the fact that she

---

[2] For purposes of this opinion, the Court refers to TILA and HOEPA jointly as "HOEPA."
[3] BAC also argues that the rescission claim fails under 15 U.S.C. § 1641(a) because BAC lacked notice of any disclosure violations when it became the assignee of the mortgage. This argument fails, as 15 U.S.C. § 1641(a) does not apply to rescission claims against assignees. *Ward v. Security Atlantic Mortg. Electronic Registration Systems, Inc.*, 858 F. Supp. 2d 561, 570 (E.D.N.C. 2012) ("Unlike a statutory damages claim against an assignee under § 1641(a), a rescission claim against an assignee under § 1641(c) may be brought even if there is no TILA violation apparent on the face of the loan documents."); *Carmern v. Metrocities Mortg.*, No. 8-2729, 2010 WL 421115, at *6 (D.N.J. Feb. 1, 2010) (same); *Miranda v. Universal Financial Group, Inc.*, 459 F. Supp. 2d 760, 765 (N.D.Ill. 2006) (same).

received two copies of the Notice. *See* Bender Certification, Ex. 5. Mercado does not dispute that the document is authentic. Rather, she claims that she was confused when she signed it. Under Third Circuit precedent, Mercado's self-serving claim is sufficient to overcome the statutory presumption that Mercado received two copies of the Notice. *Cappuccio*, 649 F.3d at 191. Furthermore, as the Ninth Circuit held on almost identical facts, Mercado's representation that she did not receive two copies of the Notice creates a disputed fact issue that cannot be resolved on a motion to dismiss. *See Balderas*, 664 F.3d at 789-91.

Next, BAC argues that even if Mercado did not receive two copies of the Notice at the closing, Mercado's rescission claim is untimely under 15 U.S.C. § 1635(f) because Mercado filed suit more than three years after the closing. But the relevant date for purposes of 15 U.S.C. § 1635(f) is the date Mercado provided BAC with notice of her intent to rescind the mortgage, not the date Mercado filed suit. *See Sherzer*, 707 F.3d at 267. Because Mercado sent BAC a notice of rescission on January 4, 2011, less than three years after her mortgage closed on June 19, 2008, Mercado's HOEPA rescission claim is timely. Accordingly, the Court will **DENY** the motion to dismiss the HOEPA rescission claim.

       2.       RESPA (Count V)

Count V asserts a claim for a violation of RESPA. Though Mercado is not clear on this point, it appears she believes that BAC violated RESPA in two ways. First, Mercado suggests that BAC violated 12 U.S.C. § 2603 and 12 U.S.C. § 2604 ("Section 2603 and 2604") because Salerno failed to provide Mercado with certain disclosures at the closing. Second, Mercado suggests that BAC violated 12 U.S.C. § 2605(e) ("Section 2605(e)") when it failed to respond to the January 4, 2011 Letter. Neither argument succeeds.

As an initial matter, Mercado has not stated a claim under Sections 2603 and 2604 because neither section is privately enforceable. *See Lawrence v. Emigrant Mortg. Co.*, No. 11-3569, 2012 WL 1108532, at *9 (D.N.J. Mar. 30, 2012) ("[T]he Court finds that RESPA does not create a private right of action for a violation of § 2603."); *Lamb v. Bank of America, N.A.*, No. 11-819, 2012 WL 87146, at *4 (E.D.Mo. 2012) ("[C]ourts have consistently held that Congress did not create a private right of action for violation of §§ 2603 and 2604.").

Nor has Mercado stated a claim under Section 2605(e). Section 2605(e)(1)(A) provides:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

"[L]etters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e)." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012). Because the January 4, 2011 Letter addresses only the validity of Mercado's mortgage, the January 4, 2011 letter was not a qualified written request, and BAC was under no obligation to respond to it. Accordingly, the Court will **DISMISS** Count V **WITH PREJUDICE**.

### B. State Law Claims

#### 1. Fraud (Count I)

Count I is a claim for common law fraud. BAC moves to dismiss Count I, arguing that BAC cannot be held liable for Salerno's misrepresentations because Salerno was not BAC's agent. In the alternative, BAC argues that even if Salerno was BAC's agent, Salerno's misrepresentations were not fraudulent. At this stage of the litigation, the Court must reject BAC's arguments.

The Court begins with agency. "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Sears Mortg. Corp. v. Rose*, 134 N.J. 326, 337 (1993). BAC does not dispute that it can be held liable the acts of its agents. Instead, it argues the Mercado's allegations of control are conclusory and should be disregarded for purposes of the instant motion. The Court disagrees. Mercado claims that BAC "directed and authorized" Salerno's communications with Mercado, that BAC "directed" Salerno with respect to "closing conditions, funding conditions, and as to changing interest rate offerings," and that BAC ultimately "caused" Salerno to "direct" Mercado into a particular loan. Compl. ¶¶ 41, 42, 44. While these allegations might be lacking in detail, they are not conclusory. On a motion to dismiss, the Court must make all favorable inferences in favor of the non-moving party. At this stage, Mercado has pled sufficient facts to establish the control needed for an agency relationship.

Next, the Court turns to BAC's argument that Mercado was not defrauded. Mercado was not defrauded, BAC contends, because Mercado could not have reasonably relied on Salerno's oral misrepresentations and because the mortgage Mercado received was based on documents Mercado signed.

To state a claim for common law fraud in New Jersey, a plaintiff must allege: "(1) a material representation by the defendant of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intent that the plaintiff rely upon it; (4) reasonable reliance by the plaintiff; and (5) resulting damage to the plaintiff." *Weil v. Express Container Corp.*, 360 N.J. Super. 599, 612-13 (App. Div. 2003). "For purposes of surviving a motion to dismiss, the concept of reasonable reliance does not contemplate an objective test." *Roll v. Singh*, No. 7-4136, 2008 WL 3413863, at *19 (D.N.J. June 26, 2008) (internal quotations and citations omitted). "Common law fraud requires a showing of actual reliance, but not objectively reasonable reliance, since the

perpetrator of a fraud may not urge that the victim should have been more circumspect or astute." *Id.* (internal citations and quotations omitted).

Here, Mercado claims that she refinanced her mortgage because Salerno told her the refinancing would reduce her mortgage payments. Mercado also claims that she was only able to qualify for the mortgage because Salerno doctored her loan documents. Finally, she claims that she defaulted on her mortgage because she could not afford the monthly payments. Together, these allegations satisfy the materiality, knowledge, intent, and damage prongs of the fraud cause of action.

For purposes of a motion to dismiss, Mercado's allegations also establish reasonable reliance. Disagreeing, BAC argues that Mercado could not have reasonably relied on extra-contractual statements from Salerno that contradicted the terms of the mortgage documents she signed. The Court notes that Mercado is a cleaner with an eighth grade education and a limited understanding of English. Compl. ¶¶ 22-23. At the motion to dismiss stage, the Court cannot say as a matter of law that Mercado's reliance on Salerno's statements was unreasonable. *See Sahoury v. Meredith Corp.*, No. 11-5180, 2012 WL 3185964, at *5 (D.N.J. Aug. 2, 2012) ("Defendants argue that because the prior oral statements "contradict" the written contract, Sahoury could not have reasonably relied on them. Such a conclusion cannot be reached on the facts available at the pleading stage."). Accordingly, the Court will **DENY** BAC's motion to dismiss Count I.

2. NJCFA (Count II)

Count II is a claim for a violation of the NJCFA. Besides from arguing that Salerno was not its agent, BAC maintains that Mercado cannot state a claim for a violation of the NJCFA because Mercado failed to plead an ascertainable loss, as required by N.J.S.A. § 56:8-19. The New Jersey Supreme Court has recognized that "[i]n cases involving breach of contract or misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005). Mercado alleges that prior to her refinancing, she had a mortgage that required payments of $1,640 per month. After she refinanced, her monthly mortgage payments exceeded $2,000 per month, and she defaulted. The Court finds that this sufficiently alleges an ascertainable loss under the NJCFA. Accordingly, the Court will **DENY** BAC's motion to dismiss Count II.

3. Breach of the Covenant of Good Faith and Fair Dealing (Count III)

Count III is a claim for breach of the covenant of good faith and fair dealing. "The implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 271-72 (3d Cir. 2004) (internal quotations and citations omitted). "So, where the terms of a contract are not specific, the implied covenant of good faith and fair dealing may fill in

the gaps where necessary to give efficacy to the contract as written." *Id.* "But where the terms of the parties' contract are clear, the implied covenant of good faith and fair dealing will not override the contract's express language." *Id.* Mercado does not allege that her mortgage contract was unclear. Accordingly, the Court will **GRANT** BAC's motion to dismiss Count III. As the Court has once dismissed this claim, and as there is no indication that Mercado can state a claim for breach of the implied covenant of good faith and fair dealing, the Court will **DISMISS** Count III **WITH PREJUDICE**. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (district courts do not need to permit a curative amendment if "an amendment would be inequitable or futile").

                4.        Conspiracy and Aiding and Abetting (Count VI)

Count VI is a claim for conspiracy and aiding and abetting. BAC moves to dismiss this claim. First, it argues that the claim is based on conclusory agency allegations. The Court has already found that Mercado's Complaint alleges agency in a non-conclusory way. Second, BAC argues that the conspiracy and aiding and abetting claim fails because Mercado has not stated any other claim against BAC. The Court has held that Mercado has stated claims upon which relief can be granted. Accordingly, the Court will **DENY** the motion to dismiss Count VI.

## V. CONCLUSION

For the foregoing reasons, BAC's motion to dismiss is **GRANTED IN PART**, and **DENIED IN PART**. Counts III and V are **DISMISSED WITH PREJUDICE**. Counts I, II, IV (the rescission claim only), and VI survive. An appropriate order follows.

                                                   /s/ William J. Martini
                                        **WILLIAM J. MARTINI, U.S.D.J.**

**Date: June 13, 2013**